[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11618
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-22689-MGC

KAREN BERENGUELA-ALVARADO,

Plaintiff - Appellee,

versus

ERIC CASTANOS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 7, 2020)

Before MARTIN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

This case stems from a previous appeal to this Court, *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352 (11th Cir. 2020), involving Hague Convention proceedings initiated by Karen Berenguela-Alvarado, a Chilean citizen, who was seeking the return of her young daughter, whom we'll call EICB. *Id.* at 1354. "Among other functions, the Hague Convention on the Civil Aspects of International Child Abduction," which was implemented by Congress through the International Child Abduction Remedies Act (ICARA), "establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained." *Pfeiffer v. Bachotet*, 913 F.3d 1018, 1023 (11th Cir. 2019) (quoting 22 U.S.C. § 9001(a)(4)). The Hague Convention aims to return children to the country of their "habitual residence" and to "ensure that rights of custody and of access under the law of one . . . [s]tate are effectively respected in the other . . . [s]tates." *Chafin v. Chafin*, 742 F.3d 934, 936 (11th Cir. 2013) (quotation omitted).

Berenguela-Alvarado alleged that EICB's father, Eric Castanos—a naturalized U.S. citizen—wrongfully retained EICB in Florida while she was on a short-term visit and coerced Berenguela-Alvarado into signing a document purporting to consent to that retention. *Berenguela-Alvarado*, 950 F.3d at 1354–56. In the original proceedings, "[t]he district court found that although Berenguela-Alvarado had made out a prima facie case that Castanos had

2

wrongfully retained EICB, Berenguela-Alvarado had consented to that retention and therefore wasn't entitled to EICB's return."[1]  *Id.* at 1354.  Berenguela-Alvarado appealed.  *Id.* at 1357.  A panel of this Court vacated and remanded the district court's order, concluding that it had erred in two respects: (1) "[a]s a matter of fact . . . by relying on non-existent testimony that Castanos never threatened Berenguela-Alvarado as a means of securing her consent to EICB staying the United States"; and (2) "[a]s a matter of law . . . by shifting the burden on the consent issue back to Berenguela-Alvarado, requiring her to prove by a preponderance of the evidence that Castanos's threat constituted 'duress.'"  *Id.* at 1361–62.

On remand, having considered supplemental briefing on the import of this Court's opinion, the district court granted Berenguela-Alvarado's petition for EICB's return.  Although Castanos requested that the record be reopened so that he could present further evidence on his affirmative defenses, the district court held

---

[1] To establish a prima facie case of wrongful retention, Berenguela-Alvarado had to prove the following: "(1) that EICB 'was a habitual resident of [Chile] immediately before [her] retention in the United States'; (2) that Castanos's retention breached Berenguela-Alvarado's custody rights under Chilean law; and (3) that Berenguela-Alvarado 'had been exercising her custody rights at the time of retention.'"  *Berenguela-Alvarado*, 950 F.3d at 1358 (alterations in original) (quoting *Chafin*, 742 F.3d at 938).  Under the Hague Convention, once a petitioner proves a prima facie case of wrongful retention, it is up to the retaining parent to prove one or more enumerated affirmative defenses.  *Id.*  Castanos asserted three defenses—(1) that Berenguela-Alvarado consented to the retention; (2) "that there [wa]s [a] grave risk of physical and psychological harm to EICB if she . . . returned to Chile"; and (3) that EICB was "of sufficient age and maturity to voice [her] objection" to being sent back to Chile.  *Id.* at 1356 (internal quotation marks omitted).  Because the district court found the consent defense dispositive, it declined to rule on Castanos's remaining defenses.  *Id.* at 1357.

that he had "provide[d] no persuasive reason the Court need[ed] to accept additional evidence on remand," as he had already been given an opportunity to call witnesses and present his case in the initial proceedings. The district court went on to find that Castanos hadn't met his burden to prove his asserted affirmative defenses.

Castanos now appeals the district court's order on remand. He makes two arguments: (1) that the district court erred in failing to consider the Supreme Court's holding in *Monasky v. Taglieri*, 140 S. Ct. 719 (2020)—which was issued the same day as this Court's opinion in the first appeal—in its analyses of EICB's habitual residence and his consent defense; and (2) that the district court abused its discretion by declining to reopen the record. Finding no error or abuse of discretion, we affirm.

## I

### A

We'll start with Castanos's *Monasky*-related arguments.[2] *Monasky* "concern[ed] the standard for determining a child's 'habitual residence' and the standard for reviewing that determination on appeal." 140 S. Ct. at 723. The case involved a U.S. citizen mother, Monasky, who brought her infant daughter to the

---

[2] In an appeal from an order on a petition for return of a child, "[w]e review the district court's findings of fact for clear error and review *de novo* its legal determinations and application of the law to the facts." *Pfeiffer*, 913 F.3d at 1022.

4

United States from Italy, when her Italian husband, Taglieri, became abusive. *Id.*

Taglieri successfully petitioned for the child's return to Italy before the district

court, the Sixth Circuit affirmed en banc, and Monasky appealed to the Supreme

Court, challenging the district court's habitual-residence determination. *Id.* The

case presented two issues: (1) "Could Italy qualify as [the child's] 'habitual

residence' in the absence of an actual agreement by her parents to raise her there?"

and (2) "Should the Court of Appeals have reviewed the District Court's habitual-

residence determination independently rather than deferentially?" *Id.*

The Supreme Court held "that a child's habitual residence depends on the

totality of the circumstances specific to the case" and that "[a]n actual agreement

between the parents is not necessary to establish an infant's habitual residence."

*Id.* It further held "that a first-instance habitual-residence determination is subject

to deferential appellate review for clear error." *Id.* The Supreme Court ultimately

chose to affirm the judgment below—rather than remanding the case to give "the

lower courts an opportunity to apply the governing totality-of-the-circumstances

standard in the first instance"—because "[n]othing in the record suggest[ed] that

the District Court would appraise the facts differently on remand," and "[a] remand

would consume time when swift resolution is the Convention's objective." *Id.* at

731.

5

**B**

Castanos contends that the district court erred in its order on remand by not considering *Monasky* in its determinations that he hadn't met his burden of proof on his consent defense and that EICB's habitual residence was Chile. Castanos didn't raise either of these *Monasky*-related arguments in his supplemental brief, his first motion to stay the district court's order on remand, or his amended motion to stay, nor did he challenge the district court's habitual-residence determination during the original proceedings. He first mentioned *Monasky* in a motion filed after his amended motion to stay, but before his notice of appeal, which he styled as an "Emergency Motion for Temporary Stay of 7-Days, Pending Resolution of Post-Judgment Motions, or in the Alternative for Stay Pending Seeking a Stay on Appeal, to Incorporate Recent Supreme Court Jurisprudence Directly Affecting this Case, with Incorporated Memorandum of Law."

In that document, Castanos noted—without going much further—that "the appellate standard applied by the Eleventh Circuit . . . and the nature of this Court's Order on Remand . . . were directly affected by and coincided with a change in the standard of review and application of the law by the recent jurisprudence of the Supreme Court of the United States in *Monasky*." [3] It wasn't

---

[3] In response, the district court issued a brief "Supplement to the Court's Order Denying Respondent's Emergency Motion for Stay." In that document, the district court noted that "[t]he Eleventh Circuit, in vacating this Court's order denying the petition for return of child, did not

6

until his notice of appeal that Castanos presented the details of the arguments he now makes before us. Generally, "[w]e will not address a claim that has been abandoned on appeal or one that is being raised for the first time on appeal, without any special conditions." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1335 (11th Cir. 2004).

Even assuming, though, that Castanos didn't abandon his *Monasky*-related arguments by failing to raise them adequately in the district court, we conclude that they are without merit. First, the district court's original habitual-residence determination, while brief, effectively employed a *Monasky*-compliant, totality-of-the-circumstances analysis—it didn't rely on any sort of "actual agreement" requirement. In particular, the district court said the following with respect to EICB's habitual residence:

> While neither the Convention nor ICARA define "habitual residence," the United States Court of Appeals for the Eleventh Circuit has adopted a fact-intensive approach. This analysis "focuses on the existence or non-existence of a settled intention to abandon the former residence in favor of a new residence, coupled with an actual change in geography and the passage of a sufficient length of time for the child to have become acclimatized." *In re S.L.C.*, 4 F. Supp. 3d 1338, 1346 (M.D. Fla. 2014).
>
> Here, EICB habitually resided in Chile before the alleged wrongful retention. EICB lived all but two months of her first five years of her life in Chile. Clearly, Chile is "the place where [EICB]

disturb the Court's habitual residence finding. Rather, it held the Court improperly found the Respondent had met his burden to establish a consent defense where he failed to present any evidence of consent." Thus, the district court held that *Monasky* "has no impact on this case."

has been physically present for an amount of time sufficient for acclimatization." *Pesin v. Osorio Rodriguez*, 77 F. Supp. 1277, 1284 (S.D. Fla. 1999). Accordingly, Berenguela-Alvarado has established the first element of her *prima facie* case.

Dist. Ct. Order at 5.

Second, even if we assume, *arguendo*, that *Monasky*'s holding can be read to apply to Castanos's consent defense—despite the fact that *Monasky* focuses exclusively on habitual-residence determinations, *see generally* 140 S. Ct. 719—Castanos's alternative *Monasky*-related argument also fails. The district court here evaluated the totality of the circumstances in concluding that Castanos failed to establish his consent defense. In particular, the district court analyzed Castanos's consent defense as follows:

> Applying the proper legal framework articulated in the Mandate, Respondent has failed to prove this affirmative defense. As the Eleventh Circuit noted, Respondent did not present any evidence related to his consent defense. Moreover, Petitioner testified that she signed the consent letter "under threat" that if she did not sign she would never see her daughter again. She further testified that she never went to the American Embassy to get the consent letter notarized because she was "making time for the deadline to expire for him to bring her back to me." Accordingly, Respondent has failed to establish Petitioner had a subjective intent to consent to EICB's retention in the United States.

Dist. Ct. Order on Remand at 8 (citations omitted).

## II

"[W]e review the denial of a motion to reopen the record for abuse of discretion." *Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1298 (11th Cir.

8

2018).  Castanos contends that—in light of *Monasky*'s holding—"the District Court erred in not allowing an additional or supplemental evidentiary hearing on remand, and denying [his] specific request for the same."  This argument is unavailing.  Castanos had ample opportunity to present evidence of his affirmative defenses during the original proceedings—indeed, he called six witnesses to testify on his behalf at an evidentiary hearing.  The district court, therefore, acted well within its "sound discretion" in denying his request to reopen the record, especially in light of the sensitive and expedited nature of Hauge Convention petitions.  *Id.* at 1302 (internal quotation marks and citation omitted); *see also Monasky*, 140 S. Ct. at 731.

**AFFIRMED**.